ASA N. OVERALL, ADMINISTRATOR OF MARY PAYNE, Plaintiff in Error, v. VESPASIAN ELLIS *et al.*, Defendants in Error.

*Note.*—When a holder of a note secured by mortgage had prior to his bankruptcy endorsed the note to third parties as collateral security for the performance of conditions, and the endorsees subsequent to the bankruptcy transferred the notes without endorsement to the plaintiff's intestate; *held,* that the plaintiff, having the legal title, had the right to enforce collection of the note and the foreclosure of the mortgage, and that the liability of the plaintiff to account to the assignee in bankruptcy did not affect the right of the plaintiff.

*Error to St. Louis Land Court.*

Plaintiff filed his petition the 14th December, 1855, in the St. Louis Land Court, to foreclose a mortgage upon certain

lands in St. Louis township, made by Vespasian Ellis in January, 1839, to secure, among other notes, three notes of five hundred and odd dollars each. The notes and mortgage were executed to John Riggin, mortgagee, who endorsed the said three notes before maturity to Thomas J. Payne for value.

In 1840, before the maturity of said three notes, Thomas J. Payne endorsed and delivered the said notes to Spalding and Tiffany, to be held by them as collateral security against certain encumbrances on other lots of ground sold by Payne to Spalding and Tiffany.

The following is the receipt and agreement: "Received of Thomas J. Payne three notes, made by Vespasian Ellis, payable to John Riggin, and by him endorsed, and also by said Payne, dated May 1st, 1839, and payable, the first in six years, for five hundred and ninety-five $\frac{20}{100}$ dollars; the second in seven years, for five hundred and fifty-six $\frac{80}{100}$ dollars; the third for five hundred and eighteen $\frac{40}{100}$ dollars, in eight years, from the respective dates of said notes; which notes it is hereby agreed shall be held on the following condition," &c. (See condition given in the opinion.)

In August, 1842, Thomas J. Payne petitioned for the benefit of the bankrupt law, and was declared a bankrupt in December, 1842.

In July, 1846, one Mary Jones, a widow, claiming to have a title paramount to said lot of thirty feet front on Main street, and also to certain other property of Spalding and Tiffany, compromised and arranged the conflicting title with Spalding and Tiffany, by making them a deed, on the 25th of July, 1846, (Rec. 41) for the said thirty feet of ground on Main street, on condition that said Spalding and Tiffany would give the said three notes for the said deed and property thereby conveyed by her, said Mary Jones, to them.

In November, 1846, Payne and Mary Jones intermarried, and a full marriage contract was executed between them, providing that all the property, real and personal, *choses in action*, and goods and chattels of the said Mary Jones, would

continue to be hers, free from all control or debts of her intended husband. Upon the execution of this contract, the marriage of the parties was solemnized.

Mrs. Mary Jones Payne died in 1853, and the plaintiff has been duly appointed her administrator, and brought this suit to foreclose the said mortgage for the payment of the said three notes.

The plaintiff asked the following instructions:

1. That the marriage contract secured to Mrs. Payne her separate interest in the property.

2. That if the notes in question were transferred and delivered by Payne to Spalding and Tiffany, in 1839 or 1840, nothing more was necessary, so far as Payne was concerned, to pass to them his title to the notes.

3. That there is no evidence in this case of any cancellation, payment or satisfaction of the note in question.

4. That if Mary Jones, prior to her marriage with Payne, or afterwards, conveyed to Spalding and Tiffany her interest in a lot of ground in St. Louis, and in consideration thereof Spalding and Tiffany delivered over the notes to Payne for her use, nothing more was required to put the title of said notes in her.

5. That it can constitute no defence to this action, even should it appear that the notes were fraudulently transferred to Mary Payne (Jones) through the agency of Thomas J. Payne.

6. That in 1842, when Payne applied for the benefit of the bankrupt act, the notes in question belonged to Spalding and Tiffany, then the assignee of Payne in bankruptcy acquired no title to them.

7. That no property acquired by Thomas J. Payne, after his application in bankruptcy, would pass by virtue of said law to said Payne's assignee in bankruptcy.

Of the above instructions the court gave the first, second and fourth, and the others were refused.

The defendants asked the following instructions, which were given by the court:

1. If the jury find from the evidence that Mary Payne was not the owner of the notes in question at the time of her death, they should find the first issue for the defendants.

(The second instruction appears in the opinion.)

3. That if the jury believe from the evidence that any witness has wilfully testified falsely in respect to any material fact, they are at liberty wholly to disregard the testimony of said witness.

The plaintiff excepted to the second instruction given for defendants, and to the refusal of the court to give those asked by the plaintiff, plaintiff submitted to non-suit with leave to move to set the same aside.

*Hill & Jewett*, for plaintiff in error.

1. The notes were endorsed in blank by Riggin, and passed by delivery. The possession, therefore, was sufficient evidence upon which to maintain this suit, an action at law. (Odell et al. v. Presbury, 13 Mo. 330 ; Webb v. Morgan et al., 14 Mo. 428 ; Bennett v. Toney, 28 Mo. 598 ; Boeha v. Nuella, 28 Mo. 180.)

2. The defendants set up no equitable defence to this suit to foreclose the mortgage. The assignee in bankruptcy took no title to the notes. The most he could have had would have been a right to redeem by complying with the conditions of the agreement between Payne and Spalding and Tiffany.

*Krum*, for defendants in error.

1. There was no final judgment in the court below from which the plaintiff could appeal.

2. Plaintiff's intestate was not the legal holder of the notes in question. They really belonged to the assignee of Payne in bankruptcy.

BATES, Judge, delivered the opinion of the court.

This is a suit brought to foreclose a mortgage of real estate against the mortgagor, the vendee of the mortgaged land and the terre tenant.

The petition states that the notes upon which the suit is founded, which were a part of those secured by the mortgage, were made by Vespasian Ellis, payable to John Riggin, by him endorsed to Thomas J. Payne, and by him to Spalding and Tiffany, and that the plaintiff's intestate, Mary Payne, (who was then a *femme sole* with the name of Mary Jones,) purchased the notes, for value, from Spalding and Tiffany. Mary Jones afterward intermarried with Thomas J. Payne.

The answer sets up that the notes have been paid and the mortgage discharged. It also denies that the plaintiff's intestate ever acquired any right to said notes.

The court directed two issues to be tried by a jury, as follows :

First—Whether Mary Payne, the plaintiff's intestate, was the owner of the notes in question or either of them at the time of her death.

Second—Whether the notes in question or either of them were fully paid, or otherwise satisfied or cancelled, before the death of Mary Payne, the plaintiff's intestate.

At the trial of these issues, after the evidence was all given, the court instructed the jury that there was no evidence of any cancellation or payment, or satisfaction of the notes in question.

That instruction disposed of the second issue in favor of the plaintiff.

The court also instructed the jury, that if they find from the evidence that Thomas J. Payne, in November, 1840, was the holder of the notes in question ; if he entered into the agreement or arrangement in respect to said notes set out in the writing read in evidence, purporting to be signed by Spalding and Tiffany and Payne ; if said Payne, at the time said agreement or arrangement was made, endorsed and delivered the notes in question to said Spalding and Tiffany ; if said Payne, in December, 1842, was decreed a bankrupt in the District Court of the United States for the District of Missouri upon his petition filed in said court for that purpose ; if, at the time said Payne was decreed a bankrupt in

said court, the said Spalding and Tiffany still held said notes under and in pursuance of said agreement or arrangement mentioned in said writings, then the right to the notes in question, after Spalding and Tiffany's right to hold them ceased, was vested in the assignee of said Payne in bankruptcy, and the jury should find the first issue for the defendant.

The writing signed by Spalding and Tiffany and Payne, referred to in that instruction, declared that said notes should be held by Spalding and Tiffany "on the following condition: Whereas, Thomas J. Payne heretofore conveyed unto Josiah Spalding and P. Dexter Tiffany, a certain lot of ground in Central St. Louis," (describing it.)   "Now, if said Payne shall free said lot from the encumbrance and lien of a certain mortgage made by said Payne to Peter Morton, president of the Clinton Bank, or to some one for the benefit of said Clinton Bank, New York, and from the liens and encumbrances of all the judgments which were rendered against said Payne previous to the recording of said deed from Payne to Spalding and Tiffany, then they, the said Spalding and Tiffany, shall account for said notes; but if the said encumbrances shall remain and the said Spalding and Tiffany shall be ejected or evicted from ssid lot, then they, the said Spalding and Tiffany, shall retain out of said notes the consideration money paid by said Spalding and Tiffany to said Payne for said lot, and interest on the amount of said consideration money from the time the same was paid to said Payne, as appears by the date of said deed."

This agreement vested in Spalding and Tiffany the legal title to said notes, (as the court in another instruction properly informed the jury,) and Payne or his assignee in bankruptcy retained only a right in a certain contingency to require of Spalding and Tiffany an account of said notes, or their proceeds, if collected. Spalding and Tiffany could assign the notes to another person, and their assignee would have good title to them, and right to enforce collection of them. Whether such assignee would be liable to account to Payne

or his assignee in bankruptcy for the proceeds of the notes, does not arise in this case. Nor does it appear in this case that the contingency has happened upon which Spalding and Tiffany might be called to an account.

The instruction given was therefore erroneous in directing the jury to find the first issue for the defendant, if they found the facts as recited in the instruction.

The respondent also contends that the appellant was not compelled by the giving of that instruction to take a non-suit, and therefore his appeal should be dismissed.

We are disposed to discourage the taking of non-suits as tending to protract litigation, but we think that in this case the instruction given so covered the case as absolutely to prevent a recovery by the plaintiff, and he was therefore justified in taking a non-suit.

If the first issue had been found against the plaintiff, obviously he could proceed no further, and the evidence as preserved in the bill of exceptions forbids that under the instructions given there could be any other finding than for the defendant.

Judgment reversed and cause remanded. Judges Bay and Dryden concur.